UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
LOUISVILLE DIVISION
CASE NO. 3:11-CV-000138

**MARY EDWARDS and LEW EDWARDS**                                    **PLAINTIFFS**

v.

**TARGET CORPORATION**                                              **DEFENDANT**

**MEMORANDUM OPINION AND ORDER**

This matter comes before the Court on the Plaintiffs' motion for new trial. (Pls.' Mot., Docket Number ("DN") 62.) The Defendant has responded. (Def.'s Resp., DN 66.) The Plaintiffs have replied. (Pls.' Reply, DN 67.) Fully briefed, this matter is now ripe for adjudication. Having considered the matter and being fully advised, the Plaintiffs' motion is **GRANTED IN PART** and **DENIED IN PART**. This action is **REOPENED** and the Plaintiffs are granted a new trial on the issue of damages but not as to the apportionment of liability.

I.

Plaintiff Mary Edwards ("Mary") was injured when she tripped and fell over a parking barrier located in a parking lot adjacent to Defendant Target Corporation's ("Target") Elizabethtown, Kentucky store. The underlying facts are more fully set forth in *Edwards v. Target Corp.*, No. 3:11-CV-00138-R, 2012 WL 1231773, at *1-3 (W.D. Ky. April 12, 2012). The case proceeded to trial on September 17, 2012. After two days of proof, the case was submitted to the jury, where the events leading to the present motion occurred.

After deliberating for approximately three hours, the jury returned its verdict. It apportioned fault between the parties, finding Mary ninety percent liable for her injuries and Target ten percent liable. As to damages, the jury awarded Mary $50,935.31 for past medical expenses, but declined to award her any damages for future medical expenses, pain and

1

suffering, lost wages or income, or impairment of future earnings ability. The jury also declined to award Mary's husband damages for loss of consortium. Other than damages for past medical expenses, the jury filled in each blank of the jury form for the other categories of damages with "$0."

When the jury returned its verdict, Mary moved for a mistrial on grounds that the damage award was inadequate. Target, on the other hand, argued that the jury should be instructed to return to the jury room and deliberate further regarding an award of pain and suffering. Mary objected to this request and continued to advocate for a mistrial because the jury failed to follow the Court's instructions as to damages. The Court denied the motion and instructed the jury to further consider the issue of damages for pain and suffering. After a short, additional deliberation, the jury awarded Mary $5,000 for pain and suffering. Following this award, Mary renewed her motion for mistrial on grounds of an inadequate award. The Court also denied that motion.

Pursuant to Federal Rule of Civil Procedure 59(a)(1)(A), Mary now moves for a new trial on two grounds. First, she claims that jury's award for pain and suffering was inadequate when weighed against the evidence presented at trial and therefore warrants a new trial on the issue of damages. As a corollary to this argument, she asserts that the initial award of zero damages for pain and suffering was inadequate and that the Court's instruction to deliberate further on the issue, and the jury's eventual award of $5,000, did not cure the defective verdict. Second, she argues that the jury's verdict indicates an inappropriate compromise among the jurors. As a result of the alleged compromise, Mary seeks a new trial on all issues, including liability.

## II.

Pursuant to Federal Rule of Civil Procedure 59(a)(1)(A), a court may grant a motion for

new trial "for any reason for which a new trial has heretofore been granted in an action at law in federal court." The language of Rule 59 has generally been interpreted to mean that "a new trial is warranted when a jury has reached a 'seriously erroneous result' as evidenced by: (1) the verdict being against the weight of the evidence; (2) the damages being excessive; or (3) the trial being unfair to the moving party in some fashion, *i.e.*, the proceedings being influenced by prejudice or bias." *Holmes v. City of Massillon, Ohio*, 78 F.3d 1041, 1045-46 (6th Cir. 1996) (citations omitted). Stated another way, courts examine objective criteria when ruling on a motion for new trial. Some of the criteria include: "[1] whether the verdict was in an amount supported by the evidence presented at trial; [2] whether the verdict was the result of improper methods, prejudice, passion, partiality, sympathy, corruption, or mistake of law or fact; [3] whether the verdict was within the compensation for the injury sustained; and [4] whether the jury award is comparable to awards in similar cases both within the state and within other jurisdictions." *Tezak v. Montgomery Ward & Co., Inc.*, 33 F. App'x 172, 176 (6th Cir. 2002) (brackets added) (citations omitted). Overall, "[a] court should refrain from interfering with a jury's verdict unless it is clear that the jury reached a seriously erroneous result. The simple fact that the grant of a new trial might result in a different outcome is not a valid basis for disturbing a jury's verdict which is otherwise based upon legally sufficient evidence." *Brooks v. Toyotomi Co., Ltd.,* 86 F.3d 582, 588 (6th Cir. 1996) (internal citations omitted) *abrogation on other grounds recognized by United States v. Webb,* 157 F.3d 451, 452-53 (6th Cir. 1998) (per curiam) *abrogated by Dillon v. United States,* 184 F.3d 556 (6th Cir. 1999).

In diversity cases, "federal law and state law both bear on the decision to grant a new trial. Rule 59 governs the procedural question of whether to grant a new trial, and the forum state, [Kentucky] in this case, determines the substantive question of whether a challenged

verdict is inadequate or excessive." *Tezak*, 33 F. App'x at 176 (citing *Adam v. J.D. Hunt Transp., Inc.*, 130 F.3d 219, 224 (6th Cir. 1997) *abrogated on other grounds by Ortiz v. Jordan*, 131 S. Ct. 884 (2011)).

### III.

Mary challenges the jury's award of damages on two grounds. In light of the evidence presented at trial, she first argues that the jury's initial award of $0 for pain and suffering was inadequate. Next, she claims that the inadequacy of the award was not cured by the jury's subsequent award of $5,000 when instructed to further consider the issue of damages. The Court considers both contentions, beginning with the second argument.

### A.

As an initial matter, the Court erred when it instructed the jury to return to the jury room and again consider whether Mary should have been awarded damages for pain and suffering. It did so because of an erroneous belief that under Kentucky law an award of damages for pain and suffering is required whenever a jury awards medical expenses. This is not the law, however. *See Miller v. Swift*, 42 S.W.3d 599, 601 (Ky. 2001) ("The law in Kentucky . . . does not require a jury to award damages for pain and suffering in every case in which it awards medical expenses."). Based on the law that the Court should have applied, the jury's task was complete when it returned the initial verdict of $0 for Mary's pain and suffering. The heart of the Court's error in instructing the jury to further consider Mary's pain and suffering damages lies in the distinction between "inadequate" and "incomplete" verdicts.

An "inadequate" verdict is one where the jury has awarded damages but those damages are clearly erroneous in light of the evidence presented at trial. An "incomplete" verdict occurs when there is some irregularly in the verdict. Common incomplete verdicts include those

situations in which a jury finds that a defendant bears no liability but awards a plaintiff damages anyway, or where a jury, through choice or accidental oversight, leaves a damages instruction completely blank. In such situations, it is appropriate to instruct a jury further deliberate in order to correct the irregularity or complete the verdict form. Where, however, the verdict is complete and one side believes that it is inadequate, the proper method to attack the inadequacy is not further deliberations but a motion for a new trial. This was the result reached by the Kentucky Supreme Court in *Cooper v. Fultz*, 812 S.W.2d 497, 499-500 (Ky. 1991). In *Cooper*, the court framed the issue and the result as follows:

> The question before us is whether, by thus specifying a deliberate intention to make no award for one (or more) elements of damages, the jury has returned a verdict with a patent irregularity which is waived by failing to timely object, or whether this represents a complete verdict which is subject to challenge as inadequate on a motion for a new trial. It is our opinion that there is a complete verdict; that it may be inadequate but it is not inconsistent . . . .
> It is indeed a "booby trap" to send back a jury which has flatly decided that the claimant's pain and suffering is worth nothing to replace the "–0–" with a dollar amount. If "–0–" is inadequate, this forces the lawyer seeking to represent a litigant who has just been abused by an inadequate jury verdict to further jeopardize his client's interest by asking that this hostile jury reconsider. *Erasing the zero and replacing it with a few dollars will not correct the inadequacy. The first verdict as complete should be received and should be subject to a motion for a new trial which should be granted unless there is countervailing evidence such that the jury's verdict, taken as a whole, withstands the test of inadequacy.*

*Id.* (emphasis added). In the present case, the jury first returned a verdict of $0 for Mary's pain and suffering. This was a complete verdict and was neither incomplete nor irregular. As a result, the Court erred by instructing the jury to conduct further deliberations as to pain and suffering damages. The Court should have accepted the $0 damages verdict for pain and suffering and then considered Mary's motion for new trial based on whether the verdict was inadequate in light of the evidence. The Court now considers this argument in the next section.

**B.**

Mary contends that a new trial on the issue of damages is warranted because the jury's first award of $0 for her pain and suffering was inadequate based on the evidence presented at trial. In reviewing the evidence, the Court is reminded that its task is not to determine whether it would have awarded damages but rather whether the evidence supports the jury's verdict. *See Brooks*, 86 F.3d at 588 ("The simple fact that the grant of a new trial might result in a different outcome is not a valid basis for disturbing a jury's verdict which is otherwise based upon legally sufficient evidence."). Upon review of the record, the Court finds that the jury's verdict was inadequate in light of the evidence presented at trial. No reasonable jury could have found that Mary experienced *no* pain and suffering.

As stated above, Kentucky law "does not require a jury to award damages for pain and suffering in every case in which it awards medical expenses." *Miller*, 42 S.W.3d at 601; *see Bayless v. Boyer*, 180 S.W.3d 439, 444-45 (Ky. 2005) ("[T]he general principle advanced in *Miller* . . . is not constrained to the facts of that case. Rather, that principle is broadly applicable to cases which claim this type of error."). In fact, the Kentucky Court of Appeals, applying the principles set forth in *Miller* and *Bayless*, affirmed jury verdicts in circumstances, like those *sub judice*, where the jury awarded medical expense but decline to award damages for pain and suffering. *See, e.g.*, *Dennis v. Fulkerson*, 343 S.W.3d 633, 637 (Ky. Ct. App. 2011) ("While the jury certainly could have reach a different conclusion based upon the evidence presented, the conclusion it reach with regard to [damages for] pain and suffering was nonetheless supported by the evidence."); *Bledsaw v. Dennis*, 197 S.W.3d 115 (Ky. Ct. App. 2006) (affirming denial of new trial where jury awarded medical expenses but no damages for pain and suffering); *Spalding v. Shinkle*, 774 S.W.2d 465 (Ky. Ct. App. 1989) (affirming denial of motion for new trial because

6

"[t]here was countervailing evidence of a substantial nature; therefore, the jury was not bound to believe [the plaintiff's] version, and they did not, as evidenced by no damages being awarded for [pain and suffering]"). That said, a motion for new trial based on the inadequacy of damages requires a court, on a case by case basis, to determine whether the award was reasonable in light of the evidence presented at trial.

In the present case, both sides presented evidence as to the pain and suffering Mary experienced as a result the trip and fall. Mary testified that she felt pain immediately after falling in the parking lot. After bystanders helped her into her car, Mary and her husband attempted to drive home but could not because she continued to experience pain and discomfort. They returned to Target, where an ambulance was called to assist Mary. She testified that she experienced sharp, intense pain when the emergency responders transferred her from her car to the ambulance. They transported her to Hardin Memorial Hospital, where it was determined that she had broken her hip in the fall.

Mary stayed in the hospital overnight, and the next morning Dr. Jeffrey Been performed a hip replacement of the broken bones. Mary remained at Hardin Memorial Hospital for five days after the surgery and was then transferred to Jane Todd Crawford Hospital in Greensburg, Kentucky, which was closer to her home. She spent nine days in a rehabilitation program at that hospital where she underwent physical therapy. Mary testified that she experienced lingering pain each day after her therapy was complete. Throughout this period she also took pain medication.

After the in-facility rehabilitation, Mary returned home. Nurses and physical therapists visited her home for approximately one month in order to continue her rehabilitation. Her grandson was also trained to administer two injections per day into Mary's stomach, which

caused her pain and bruising. After the course of in-home rehabilitation was complete, Mary's treating physician, Dr. Been, prescribed other periods of out-patient rehabilitation at various facilities near Mary's home.

Aside from the pain associated with the accident, surgery, and rehabilitation, Mary and others testified regarding Mary's quality of life before and after the accident. In the months following the surgery, she had to relearn how to walk, required assistance using the bathroom, and had to use extra precaution in her movements so as to avoid damaging the replacement joint while it healed. She now lacks the energy she had before the accident and does participate in the same recreational activities, like shopping, that she did prior to being hurt. Overall, the record contains evidence that Mary experienced pain and suffering after the accident.

Counter to the foregoing Target presented evidence that the nature and extent of Mary's pain and suffering may have been less than what she described. At the trial she testified that she no longer experienced any pain in the hip and was not taking pain medication of any kind. Post-rehabilitation, she only has a few movement restrictions that prevent her from bending at the hip or crossing her legs. Mary testified on cross-examination that she experienced a good recovery.

Dr. Been, Mary's treating physician, testified via video deposition at the trial. Dr. Been examined Mary three weeks after surgery and noted that she did not have any post-operation problems or complications. He examined Mary again in April of 2010 and found that her recovery was good, if not above average. He documented that she had a limp but did not make any notations of pain. Dr. Been followed-up with Mary every few months through 2010 and 2011. At the December 2010 check-up, Dr. Been noted that Mary was not experiencing any pain. A year later, he documented that she did not have any pain and that she had good flexion in the leg and hip. In all, Dr. Been testified that Mary experienced a routine hip surgery with a

good, if not above average, recovery.

Based on all of the foregoing evidence, the Court finds that the jury's decision to award $0 for Mary's pain and suffering was not reasonable in light of the evidence presented at trial. The record showed that Mary broke her hip as a result of the fall and immediately experienced significant pain. The injury required surgery to repair, followed by an extended hospital stay and both in- and out-patient rehabilitation. Furthermore, although Mary experienced a good recovery, the evidence showed that she has not returned to her pre-injury level of comfort, independence, or quality of life.

Although some evidence may have militated against the amount of pain and suffering Mary experienced, that evidence did not show that she had *no* pain and suffering. The award of $0 for pain and suffering was inadequate, unreasonable, and legally insufficient in light of the evidence. As a result, Mary is granted a new trial on the issue of damages because the award was inadequate in light of the evidence presented at trial.

Below the Court discusses the reasons Mary will not be granted a new trial on the issue of liability. Accordingly, the only issue for retrial is damages. The Court finds that the issue of damages is "distinct and severable" and that a trial on that issue alone will not result in any injustice. *Deutsch v. Shein*, 597 S.W.2d 141, 146 (Ky. 1980) *abrogated on other grounds by Osborne v. Keeney*, 2012 WL 6634129, at *8 (Ky. Dec. 20, 2012); s*ee Nolan v. Spears*, 432 S.W.2d 425, 428 (Ky. Ct. App. 1968) (concluding that "cases involving inadequacy of damages should be governed by the general rule which favors the directing of limited or partial retrials expect where such would result in injustice"); *Smith v. McMillan*, 841 S.W.2d 172, 175 (Ky. 1992) ("As we regard the issue of damages as 'distinct and severable' from the issue of liability in this case and discern no injustice which will result, retrial will be limited to damages.").

**IV.**

Finally, Mary seeks a new trial on all issues, including liability, because the verdict was the result of an improper compromise among the jurors as to the separate issues of liability and damages. In support of her argument, Mary puts forward four points that allegedly demonstrate the jury's verdict was the product of an improper compromise: (1) the issues of liability and comparative fault were close; (2) the jury's damages verdict bore no relationship to the evidence of Mary's damages; (3) the length of the jury's deliberations; and (4) a question by the jury during deliberations concerning settlement negotiations prior to trial.

"If a verdict is arrived at by compromise, by which some jurors surrender their conscientious convictions as to material issues or right of recovery in return for certain concessions by the other jurors on another issue, or issues, it is an invalid verdict and should be set aside." *Kingsport Utils., Inc. v. Lamson*, 257 F.2d 553, 559 (6th Cir. 1958) (citations omitted). There is a presumption in favor of a valid verdict, however, "if it is the result of honest judgment." *Id.* (citation omitted). "Most verdicts are the product of some give and take . . . . A verdict reached through such open minded discussion between jurors with a proper regard for the opinions of others, is not invalid, provided the final result, after it is reached, is conscientiously approved by the jurors as a fair and just verdict." *Id.* (citations omitted).

Mary first argues the verdict was compromised because the issues of liability and comparative fault where close. This argument is without merit because, as shown by the jury's apportionment, liability and comparative fault were not close issues. After deliberating, the jury apportioned liability, assigning ninety percent to Mary and ten percent to Target. The disparity between the apportionment of fault shows that it was not a close issue. Had it been closely contested, the Court would have expected the apportionment to be more evenly divided. After

hearing all of the evidence, the Court was not surprised at the jury's apportionment of fault. It was clear that there would be a significant apportionment of fault to Mary.

Second, Mary claims the verdict was compromised because the damages awarded bore no relationship to the evidence presented at trial. As discussed in the preceding section, the Court agrees with Mary on this point. It, alone, is not outcome determinative, however.

Third, Mary points to the length of deliberations as an indication of compromise. All proof in the case was presented in approximately a day and a half of trial, which was comprised of between ten and twelve hours of testimony, opening and closing statements, and instruction from the Court. After hearing all proof and receiving instructions, the jury deliberated for about three hours before returning its initial verdict. Mary claims that the length of deliberations, given the relatively short length of the trial, is an indication of compromise. The Court disagrees. Nothing in the length of deliberation gives the Court pause. The jury heard testimony on a number of issues. It heard extended testimony on the configuration of the parking barriers in Target's parking lot and whether those barriers were easily observable by the reasonable person. This included testimony from lay witnesses who saw Mary fall and expert testimony from individuals in the parking industry. The jury also heard testimony from Mary's medical providers concerning the nature and extent of her injuries. Finally, the jury heard from Mary, herself, concerning these events and her pain and suffering, and from her husband, Lew, about his loss of consortium. Given the number of witnesses and issues that the jury had to address during deliberations, the Court finds no indication of compromise in the three-hour deliberation time.

Finally, Mary claims that a question by the jury during deliberations concerning settlement offers indicates a compromised verdict. During the course of the initial deliberations,

11

the jury sent a written question to the Court. The question inquired as to whether the parties had entered into settlement negotiations and the amount of any settlement that had been offered. The Court promptly issued a written response, which did not respond to the jury's question but rather instructed them that they could only decide the case on the evidence presented to them during the trial. The jury did not renew its inquiry, and the Court finds no indicia of compromise in the jury's question or in the Court's resulting response.

Finally, at the close of the trial, Mary requested that the Court poll the individual jurors. Each juror indicated that the verdict was his or her own verdict. The jurors' unanimous response when individually polled is a strong indication that the verdict was a product of considered deliberations and not of compromise. Accordingly, the Court finds no indication of compromise in the jury's verdict that would warrant a new trial on all issues.

## CONCLUSION

Plaintiffs Mary and Lew Edwards moved the Court for a new trial pursuant to Federal Rule of Civil Procedure 59. For all of the foregoing reasons, their motion is **GRANTED IN PART** and **DENIED IN PART**. This action is **REOPENED** and the Plaintiffs are granted a new trial solely on the issue of damages. The Plaintiffs' motion is denied in all other aspects.

A telephonic scheduling conference of the parties is set for **Monday, April 29, 2013 at 9:00 CST**. The Court shall initiate the call.